IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Catrina Patricia Weedon,            )        C/A No. 0:11-2971-DCN-PJG
                                    )
                    Plaintiff,      )
                                    )
v.                                  )
                                    )
Michael J. Astrue,                  )        **REPORT AND RECOMMENDATION**
Commissioner of Social Security,    )
                                    )
                    Defendant.      )
_____)

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Catrina Patricia Weedon ("Weedon"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**ADMINISTRATIVE PROCEEDINGS**

In April 2007, Weedon applied for DIB and SSI, alleging disability beginning January 27, 2005. (Tr. 137-45.) Weedon's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on September 3, 2009, at which Weedon, who was represented by Nowell S. Lesser, Esquire, appeared and testified. The ALJ issued a decision on November 20, 2009 denying benefits and concluding that Weedon was not disabled. (Tr. 21-31.)

Weedon was born in 1977 and was twenty-seven years old at the time of her alleged disability onset date. (Tr. 137.) She has an eleventh-grade education and training as a certified nursing assistant, and past relevant work experience as a certified nursing assistant, a housekeeper, and a cashier. (Tr. 171, 175-76.) Weedon alleged disability since January 27, 2005 due to back problems. (Tr. 170.)

The ALJ found as follows:

1. The claimant will meet the insured status requirements of the Social Security Act through June 30, 2011.

2. The claimant has not engaged in substantial gainful activity since January 27, 2005, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

           *  *  *

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

           *  *  *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

           *  *  *

5. . . . [T]he claimant has the residual functional capacity to perform light work, which is defined as the ability to lift/carry 10 pounds frequently and 20 pounds occasionally, stand 6 hours in an 8 hour workday, walk 6 hours in an 8 hour workday and sit 6 hours in an 8 hour workday as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is functionally literate, having capability to read at a 2nd grade level, spell at a 2nd grade level, and perform arithmetic at a 3rd grade level. She is able to lift, at most, 25 pounds. The claimant is also limited to work involving no climbing of ramps or stairs. She must also avoid frequent bending and twisting. The claimant can perform other postural activities frequently, but is limited to simple tasks.

           *  *  *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

           *  *  *



7.  The claimant was born . . . [in] 1977 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

\* \* \*

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 27, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 23-31.) The Appeals Council denied Weedon's request for review on August 31, 2011, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(I), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1)  whether the claimant is engaged in substantial gainful activity;

Page 3 of 15



(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform her past relevant work; and

(5)    whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]   If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. §§ 404.1520(h), 416.920(h).



## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Weedon raises the following issues for this judicial review:

I.     The ALJ erred in finding that Plaintiff's mental condition did not meet the criteria of listing 12.05C.

II.    The ALJ erred in failing to consider the combined effect of Plaintiff's multiple severe impairments.

(Pl.'s Br., ECF No. 18.)



**DISCUSSION**

**A.    Listing 12.05C**

At Step Three of the sequential analysis, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. §§ 404.1508, 416.908. The Commissioner can also determine that the claimant's impairments are medically equivalent to a Listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a Listing. 20 C.F.R. §§ 404.1526(a), 416.926(a).

Weedon argues that the ALJ erred in finding that she did not meet Listing 12.05C for Mental Retardation. That Listing provides:

> 12.05 Mental Retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function . . . .

20 C.F.R. Pt. 404, Subpart P, App. 1, Listing 12.05.

The United States Court of Appeals for the Fourth Circuit has recently made clear that whether a claimant meets Listing 12.05C is a three-pronged inquiry.  First, the ALJ must find that the claimant satisfies the introductory paragraph to the Listing by finding that she has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before the age of 22.  Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012) (describing this inquiry as "Prong 1").  Next, the Listing requires a claimant to satisfy one of four additional requirements, categorized in the Listing as Requirements A-D.  Here, as in Hancock, Requirement C is at issue, requiring an IQ score of 60-70, which the Fourth Circuit describes as Prong 2, as well as a "physical or mental impairment imposing an additional and significant work-related limitation of function," identified as Prong 3.  Id.

No one appears to dispute that Weedon meets the Paragraph C criteria of Listing 12.05, Prongs 2 and 3.  Rather, this appeal centers on the requisite criteria in the introductory paragraph—Prong 1—requiring "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before the age of 22. 20 C.F.R. Pt. 404, Subpart P, App. 1, Listing 12.05.  The ALJ specifically found that Weedon did not meet Listing 12.05C because Weedon did not demonstrate deficits in adaptive functioning.  In support of this conclusion, the ALJ noted Weedon's significant work history at substantial gainful activity levels. (Tr. 26.) She observed that Weedon had past relevant work experience as a certified nursing assistant, for which she was required to pass an examination.  Additionally, the ALJ supported her conclusion that



Weedon did not demonstrate deficits in adaptive functioning with her observation that Weedon had lived independently while raising her children. Further, Weedon demonstrated the ability to pay her bills on time, keep medical appointments, shop, and manage her checking account. Finally, the ALJ found that Weedon's decision to invest some of the lump-sum workers' compensation payment from her back injury for her children's education further lent support to the conclusion that Weedon did not demonstrate deficits in adaptive functioning. (Id.)

Weedon argues that the ALJ erred in considering Weedon's work history, citing Luckey v. U.S. Dep't of Heath & Human Servs., 890 F.2d 666, 669 (4th Cir. 1989), for her argument that the ALJ is precluded from considering a claimant's previous work history in determining whether the section 12.05C criteria are met. By contrast, the Commissioner relies on the more recent decision of the Fourth Circuit in Hancock, 667 F.3d 470, arguing that an ALJ may properly consider such evidence.

A review of the cases recently interpreting and applying 12.05 suggests that Weedon's interpretation of Luckey and the Commissioner's reading of Hancock may both be overly broad. Rather, case law shows that the issue of whether a claimant manifested deficits in adaptive functioning during the developmental period is a fact-specific inquiry with few bright-line rules. Accord Salmons v. Astrue, No. 5:10CV195-RLV, 2012 WL 1884485, at *5 (W.D.N.C. May 23, 2012). Cases interpreting Listing 12.05 provide some parameters for an ALJ's conclusion on this issue. Compare Hancock, 667 F.3d at 475-76 (affirming Commissioner's determination that claimant did not have the requisite deficits in adaptive functioning where the claimant had worked as a battery assembler and a drop clipper; performed tasks such as shopping, paying bills, and making change; took care of three small grandchildren at level acceptable to the State Department

of Social Services; did a majority of the household chores, attended school to obtain a GED; and did puzzles for entertainment) with Rivers v. Astrue, No. 8:10-cv-314-RMG, 2011 WL 2581447 (D.S.C. June 28, 2011) (reversing finding of no deficits in adaptive functioning where claimant was functionally illiterate, showed poor academic performance with multiple IQ tests in or before the third grade showing scores in the 50s, and dropped out of school in the ninth grade). Cases interpreting Listing 12.05C also provide instruction on the factors that play into this determination. For example, even though IQ range constitutes the Prong 2 determination, the actual score is often considered in conjunction with the level of adaptive functioning. See, e.g., Conyers v. Astrue, No. 4:11-CV-00037-D, 2012 WL 3282329, at *8 (June 29, 2012), adopted in 2012 WL 3283285 (E.D.N.C. Aug. 10, 2012); Holtsclaw v. Astrue, No. 1:10CV199, 2011 WL 6935499, at *4 (W.D.N.C. Dec. 30, 2011) (both discussing IQ score when considering the level of adaptive functioning at the Prong 1 inquiry); see also Norris v. Astrue, No. 7:07-CV-184-FL, 2008 WL 4911794, at *3 (E.D.N.C. Nov. 14, 2008) (noting that a diagnosis of mental retardation is possible with an IQ score of 70-75 when there are significant deficits in adaptive behavior and may not be supported even with an IQ score of below 70 when there are not significant deficits). Moreover, in the absence of any evidence of a change in the claimant's intelligence functioning, the law assumes that the claimant's IQ has remained relatively constant. Luckey, 890 F.2d at 668. Similarly, a claimant's diagnosis, if there is one, is pertinent: when a claimant has been diagnosed as mildly mentally retarded in a Listing 12.05C case, courts are more likely to affirm a finding of deficits in adaptive functioning prior to age 22 than if the claimant has the lesser diagnosis of borderline intellectual functioning. Conyers, 2012 WL 3282329, at *9 (discussing claimant's level of adaptive functioning and noting that the claimant was classified in the low end of the spectrum of mildly

mentally retarded);[2] <u>Salmons</u>, 2012 WL 1884485, at *5 (discussing claimant's level of adaptive functioning and noting that the claimant was classified in the borderline intellectual functioning category).

Whether the claimant is illiterate is also an important factor. See <u>Luckey</u>, 890 F.2d at 668-69; <u>Salmons</u>, 2012 WL 1884485, at *7; <u>Holtsclaw</u>, 2011 WL 6935499, at *4; <u>Rivers</u>, 2011 WL 2581447, at *3-4. Similarly, whether the claimant has ever lived independently is a relevant inquiry. <u>Compare Salmons</u>, 2012 WL 1884485, at *4 <u>with Holtsclaw</u>, 2011 WL 6935499, at *5. Another guiding factor is whether the claimant has ever provided care for others, or, conversely, whether she herself is dependent on others for care. <u>Compare Salmons</u>, 2012 WL 1884485, at *7 (noting claimant was heavily dependent on his mother and was not responsible for the care or supervision of anyone else) <u>and Holtsclaw</u>, 2011 WL 6935499, at *4-5 (noting claimant had never lived independently and required a parent's help) <u>with Hancock</u>, 667 F.3d at 475-76 (affirming denial of benefits where the claimant managed the household and cared for her three young grandchildren) <u>and Caldwell v. Astrue</u>, No. 1:09cv233, 2011 WL 4945959, at *3 (W.D.N.C. Oct. 18, 2011) (noting claimant assisted in the care of an elderly parent).

School records and past academic performance are also important indicators of deficits in adaptive functioning prior to age 22. See <u>Salmons</u>, 2012 WL 1884485, at *7 ("[F]unctional academic skills is the primary measure of deficits of adaptive functioning before age 22."); <u>Rivers</u>, 2011 WL 2581447, at *3 (noting that claimant was classified as special needs at school, had repeated evaluations in elementary school with IQ scores all in the 50s, and dropped out of school in the ninth

---

[2] Although <u>Conyers</u> was addressing Listing 12.05B, diagnosis can be pertinent even when the issue is whether the Listing 12.05C criteria are met.



grade); see also Conyers, 2012 WL 3282329, at *8-9 (discussing the claimant's school history).

Additionally, work history, while it cannot preclude benefits where the Listing 12.05C criteria are otherwise met, Luckey, 890 F.2d at 669, can be relevant in determining whether a claimant manifested deficits in adaptive functioning prior to age 22.  Hancock, 667 F.3d at 475-76 (concluding ALJ's finding that the claimant did not manifest requisite deficit in adaptive functioning to be supported by substantial evidence where the ALJ considered, among many other factors, that the claimant had worked several jobs); Harts v. Astrue, 2012 WL 529982, at *6 n.3 (Jan. 30, 2012) (distinguishing Luckey because the ALJ used the claimant's work history as only one factor to support his finding of no significant deficits in adaptive functioning and because the claimant in Harts did not otherwise meet the Listing 12.05C criterion of a valid IQ score within the range of 60-70), adopted and incorporated in 2012 WL 529980 (D.S.C. Feb. 17, 2012).  Finally, the tasks a claimant is able to undertake, although not determinative, have been considered in this analysis.  See generally Radford v. Astrue, No. 5:08-CV-421-FL, 2009 WL 1675958, at *6 (E.D.N.C. June 10, 2009) (finding that the claimant's ability to perform certain tasks was not inconsistent with mild mental retardation); see, e.g., Hancock, 667 F.3d at 476 & n.3 (affirming ALJ's consideration of the claimant's ability to perform tasks such as shopping, paying bills, and making change); Salmons, 2012 WL 1884485, at *7 (discussing claimant's inability to do household chores, cook, and drive).

Applying these factors to the record presented, the court finds that Weedon has failed to show that the ALJ's conclusion that Weedon did not meet the Prong 1 requirements was unsupported by substantial evidence or controlled by an error of law.  As discussed above, the ALJ considered many

of the factors discussed above in reaching her conclusion.[3]  For example, the decision discusses Weedon's academic history, noting that although Weedon received a special certificate for learning disabilities, she testified that she graduated from high school.[4]  (Tr. 25.)  Specifically discussing Listing 12.05C, the ALJ considered that Weedon lived independently while raising her children, paid her bills on time, kept medical appointments, shopped, and managed a checking account.  (Tr. 26.)  The ALJ also considered that Weedon had a work history at substantial gainful levels, including a semi-skilled field where she was required to attend a class and pass a test.  (Id.)  Further, the ALJ observed in her decision that Weedon's full scale IQ score was 70—the high end of the range for satisfying the Paragraph C criteria—and that her medical diagnosis was borderline intellectual functioning rather than mental retardation.  (Tr. 23-24; see also Tr. 438-41 (evaluation of examining physician Dr. Sherry Reider diagnosing Weedon with borderline intellectual functioning rather than mild mental retardation); Tr. 442-54, 640 (opinions of state agency psychologists Drs. Von and Vidic that Weedon's borderline intellectual functioning did not meet Listing 12.05C)); see also 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A) (requiring *documentation of a medically determinable impairment* as well as consideration of the degree of limitation that impairment may impose).  Because the ALJ appears to have considered pertinent evidence and weighed appropriate factors in analyzing whether Weedon met Listing 12.05C, the court cannot say that her decision was not

---

[3] Although Weedon points out that the ALJ's discussion of Listing 12.05C is relatively brief, the court observes that the ALJ's discussion of this particular Listing follows her analysis of whether Weedon met other Listings, some of which addressed the same types of issues pertinent to the Listing 12.05C inquiry.

[4] The ALJ's decision contains a specific finding that Weedon is "functionally literate." (Tr. at 26, ECF No. 8-2 at 27.)



supported by substantial evidence or was controlled by error or law. The fact that Weedon can point

to other evidence that supports her position does not render the ALJ's decision unsupported. See

Hancock, 667 F.3d at 476.

**B.    Combination of Impairments**

Weedon also contends, relying largely on Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989),

that the ALJ erred in failing to consider whether the combined effect of all of her impairments rises

to the level of meeting a Listing. Weedon argues that the ALJ did not make particularized findings

on the combined effect of Weedon's impairments. When a claimant has more than one impairment,

the ALJ must consider the combined effect of all impairments without regard to whether any such

impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523,

416.923. An ALJ may not "fragmentize" the claimant's separate impairments in his or her analysis.

Walker, 889 F.2d at 49-50.

Even assuming Weedon is correct that the ALJ's discussion regarding the combined effect

of Weedon's impairments is not sufficiently dense and compact, Weedon has failed to explain how

more discussion or explanation by the ALJ regarding the combined effects of Weedon's alleged

impairments, which the ALJ did not find resulted in any additional limitations, (see generally Tr. 24),

would change the outcome of this case.[5] See Wright v. Astrue, No. 2:10-2449-DCN-BHH, 2011 WL

5403104, at *7-8 (Oct. 18, 2011), adopted in 2011 WL 5403070 (D.S.C. Nov. 8, 2011) (finding that

the ALJ adequately considered the claimant's relevant impairments and symptoms in combination

and noting the claimant had not explained how the outcome of the ALJ's decision would have been

---

[5] The court observes that it is the plaintiff's burden to present evidence that her impairments
meet or equal a Listing. Kellough v. Heckler, 785 F.2d 1147, 1152 (4th Cir. 1986).



different if the decision had included more discussion of the claimant's impairments and symptoms in combination) (citation omitted); see also Glockner v. Astrue, C/A No. 0:11-955-CMC-PJG, 2012 WL 4092618, at *5 (D.S.C. Sept. 17, 2012) (finding that the ALJ sufficiently discussed the plaintiff's alleged impairments and limitations to demonstrate that he considered the plaintiff's impairments in combination and observing that the plaintiff neither cited an impairment ignored by the ALJ nor offered any explanation as to how more discussion or explanation may have changed the outcome in the case).

### RECOMMENDATION

For the foregoing reasons, the court finds that Weedon has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 31, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).